IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DERRELL RUTH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-013 |
| | ) | |
| KAREN THOMAS, Unit Manager, | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Macon State Prison in Oglethorpe, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case file pursuant to 42 U.S.C. § 1983 concerning events occurring at Telfair State Prison ("TSP") in Helena, Georgia. Defendant moves for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **DENIED**. (Doc. no. 32.)

**I.   PROCEDURAL BACKGROUND**

Plaintiff submitted his complaint on February 14, 2022, and, because he is proceeding IFP, the Court screened the complaint, found Plaintiff had arguably stated a viable excessive force claim against Defendant Thomas, but recommended dismissal of Warden Jermaine White as well as all claims for violations of prison regulations, bringing criminal charges against Defendant Thomas, and official capacity monetary damages. (See doc. nos. 11, 13.) After United States District Judge Dudley H. Bowen adopted that recommendation as the opinion of the Court, Defendant timely filed her answer on July 20, 2022, and the Clerk issued a Scheduling

Notice setting deadlines for the case.  (Doc. nos. 19, 27, 28.)

Defendant filed a motion for summary judgment on December 19, 2022.  (Doc. no. 32.)  At that time, the Clerk of Court issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding.  (See doc. no. 33.)  When Plaintiff failed to respond, the Court again explained the rights and requirements associated with responding and extended Plaintiff's time to respond to Defendant's motion.  (Doc. no. 35.)  Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[1]  Plaintiff has not responded to the motion for summary judgment.

In accordance with Local Rule 56.1, Defendant submitted a Statement of Material Facts ("SMF") in support of her summary judgment motion.  (Doc. no. 32-7.)  Because Plaintiff did not file a responsive statement, the Court deems admitted all portions of Defendant's statement having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil Procedure 56.[2]  See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to

---

[1] The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its May 13, 2022 Order.  (Doc. no. 13, p. 5.)

[2] Federal Rule of Civil Procedure 56 requires a party disputing a fact to cite "to particular parts of materials in the record," and an affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(1) & (4).

state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

However, this does not automatically entitle Defendant to summary judgment because as the movant, Defendant continues to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009). Thus, the Court will review the record "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303; see United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

## II.  FACTUAL BACKGROUND

### A.  Undisputed Facts

Defendant is the Unit Manager at TSP. (SMF ¶ 2.) On Tuesday, October 5, 2021, at approximately 11:00 am, Plaintiff was in his cell in Dorm F-2 when prison staff made rounds to pass out food trays to inmates. (SMF ¶ 9.) Plaintiff's cell was a "closed front cell" consisting of a full, solid piece of metal with a small window and small tray flap. (SMF ¶ 3.) The tray flaps can be locked from the outside by moving a metal slide across the tray flap, and if the flap is unlocked, an inmate inside the cell can push the flap open and keep it open with his arm or other object. (SMF ¶ 4.) If an inmate's arm or other type of object is in the flap, the flap cannot be closed and locked from the outside. (SMF ¶ 5.) TSP staff unlock the flaps to pass food trays to the inmates, but leaving the flaps unlocked poses a security risk because an inmate may reach through the flap with the intent to harm someone outside the cell with a homemade weapon or by throwing

something at staff. (SMF ¶¶ 6-8.) To limit security threats to staff, TSP staff close and lock the flaps as much as possible. (SMF ¶ 8.)

### B. Defendant's Version of Events

Defendant submitted a declaration with her motion for summary judgment. (Doc. no. 32-3, Thomas Decl.) According to her declaration, while food trays were being delivered on October 5th, Plaintiff refused to move away from his open flap and instead banged on his cell door. (Id. ¶ 5.) Defendant needed to "close the tray flap and secure it" and instructed Plaintiff to stop banging and move away from the open flap several times, but Plaintiff did not comply. (Id. ¶¶ 5-6.) Defendant sprayed Plaintiff with pepper spray through the flap to force compliance, advised Plaintiff to decontaminate in the cell's sink, and had TSP medical staff examine Plaintiff at his cell. (Id. ¶ 6.) Plaintiff's cell also had an air vent at the back, allowing air to circulate from outside the dorm, through the cell, and under the cell door. (Id. ¶ 7.) Plaintiff was allowed to shower the next day—Wednesday—during his originally scheduled shower period. (Id. ¶ 8.)

Defendant explains pepper spraying inmates is a common, low risk method to safely ensure compliance with orders, as it lessens an inmate's ability to physically resist a security officer who enters his cell. (Id. ¶ 6.) Defendant chose to spray Plaintiff because entering the cell to force him to comply and move away from the flap would have risked the physical safety of both Defendant and Plaintiff. (Id.)

### C. Plaintiff's Version of Events

While Plaintiff did not file a response to Defendant's motion for summary judgment or SMF, the motion for summary judgment includes Plaintiff's September 13, 2022 deposition, and

4

those facts will be supplemented here. (See doc. no. 32-6, Deposition.)³ On October 5th, Plaintiff asked Defendant about the status of his laundry as she passed out food trays. (Id. at 7.) Defendant ignored Plaintiff's questions, gave him his tray, closed and secured the flap, and continued passing out trays to other inmates, closing and securing their flaps as she went. (Id. at 7, 12) Defendant responded by knocking—not banging—on his cell door and calling out to Defendant to have her return and answer. (Id.) Defendant instructed Plaintiff to stop knocking or she would spray him. (Id. at 7.) Defendant responded, "You can't spray me for that," and, "I need my laundry bag," while continuing to knock on the door. (Id.) Defendant again told Plaintiff to stop knocking, and Defendant responded, "F*** you." (Id. at 7-8, 12-13.) Defendant returned to Plaintiff's cell, opened the flap, and sprayed Plaintiff with pepper spray. (Id. at 8.) Plaintiff continued to knock on his cell door and told Defendant he could not breathe or see. (Id.)

Plaintiff claims the flap was not open before Defendant sprayed him, explaining he could not knock on the door and hold the flap open at the same time. (Id. at 17.) He believes Defendant only sprayed him because she was "pissed off" and wished to inflict punishment on him. (Id. at 8.) With little explanation, Plaintiff also insinuates Defendant wanted to write him a disciplinary report so he could not "phase up" while on the Tier Two program. (Id.) Plaintiff also alleges Defendant returned to the dorm to pass out ice twenty minutes later but skipped Plaintiff's cell. (Id. at 8, 10.)

Medical staff saw Plaintiff in his cell thirty minutes after the use of force. (Id. at 10.) Plaintiff states the exam was just around a minute, and they did not tell him to decontaminate, denied his request to be moved out of his cell, and did not provide him any chemicals to get the

---

³The Court cites to the page numbers assigned by transcription of the deposition transcript rather than those assigned by CM/ECF.

5

spray off his clothes and body. (Id. at 9-12.)  He remained in his cell until his shower the next day. (Id. at 9.)  Plaintiff's laundry included rags and clothes he could have used to wash himself, his room, his food tray, and his furniture, but, because he did not have his laundry, he could not wipe away the spray.  (See id. at 11, 13; see also doc. no. 1, p. 7.)  He slept in the contaminated cell overnight.  (Deposition, p. 13.)

      D.      **Effects of Pepper Spray on Plaintiff**

Defendant has produced a declaration from Dr. Sharon Lewis, the Statewide Medical Director for the Georgia Department of Corrections, analyzing the effects of pepper spray on Plaintiff's health.  (Doc. nos. 32-4 & 32-5, Lewis Decl.)  Pepper spray causes a burning sensation on uncovered parts of the body, especially the eyes, nose, mouth, and lungs, but its effects only last for a fifteen to forty-five minutes, causing no long-term damage. (Lewis Decl. ¶ 4.)

When medical staff examined Plaintiff thirty minutes after he was pepper sprayed, they noted he appeared alert, oriented times three, responsive to verbal commands, and had normal speech. (Id. ¶ 5 & Ex. A.)  Plaintiff told the nurse, "I'm much better now that I see you, but you know that I've got asthma." (Id.; see also Deposition, p. 12.)  Neither medical staff nor Plaintiff noted any injuries and a nurse instructed Plaintiff to decontaminate in his cell. (Lewis Decl. ¶ 5 & Ex. A.)

No evidence shows Plaintiff suffered any long-term damage from the October 5th use of pepper spray.  (See id. at 8.)  He admits as much in his deposition. (Deposition, p. 13.)  At Plaintiff's next medical appointments on December 2, 2021, and February 24, 2022, his Oxygen Saturation Rate were within the normal range and any ailments he had were attributable to unrelated issues. (Lewis Decl. ¶¶ 6-7 & Exs. B-C.)

### III.     DISCUSSION

#### A.     Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is

to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59).  A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendant is Not Entitled to Summary Judgment on Plaintiff's Eighth Amendment Excessive Force Claims

#### 1. Excessive Force Standard

"The Eighth Amendment's proscription of cruel and unusual punishments also governs prison officials' use of force against convicted inmates." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999).  To prevail on an excessive force claim, Plaintiff must satisfy both an objective and subjective component.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Objectively, Plaintiff must show that he suffered a "sufficiently serious" deprivation harmful enough to establish a constitutional violation.  Id.  *De minimi*s uses of physical force are beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  Accordingly, not "every malevolent touch by a prison guard gives rise to a federal cause of action," even if it "may later seem unnecessary in the peace of a judge's chambers . . . ." Id. at 9 (citation omitted).  However, because injury and force are imperfectly correlated and it is the force used that counts, an inmate "who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Subjectively, Plaintiff must show the actions taken involved the unnecessary and wanton infliction of pain.  See Whitley v. Albers, 475 U.S. 312, 319 (1986).  That is,

8

> [F]orce does not violate the Eighth Amendment merely because it is unreasonable or unnecessary: "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."

Campbell, 169 F.3d at 1374 (quoting Whitley, 475 U.S. at 319). Rather, the Court must consider "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996) (quoting Hudson, 503 U.S. at 7).

The subjective component analysis narrows the precise inquiry applicable at the summary judgment stage as follows:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support *a reliable inference of wantonness in the infliction of pain* under the standard we have described, the case should not go to the jury.

Campbell, 169 F.3d at 1375 (quoting Whitley, 475 U.S. at 322). Because the subjective component is contextual, courts consider the following factors: (1) extent of injury, (2) need for application of force, (3) relationship between need and amount of force used, (4) threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Campbell, 169 F.3d at 1375. Any action taken should be viewed in light of the wide-ranging deference accorded prison officials acting to preserve discipline and institutional security. Hudson, 503 U.S. at 6; Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (*per curiam*). For example, use of an appropriate degree of force to compel compliance with a valid order is justified. Brown v. Smith, 813 F.2d 1187, 1189 (11th Cir. 1987); see also Ort v. White, 813 F.2d 318, 325 (11th

9

Cir. 1987) (evaluating excessive force claim requires consideration of whether immediate coercive measures were taken "in a good faith effort to restore order or prevent a disturbance, and if the force used was reasonable in relation to the threat of harm or disorder apparent at the time").

### 2. Defendant Is Not Entitled to Summary Judgment

Plaintiff and Defendant present two distinct set of facts explaining why Plaintiff pepper sprayed Defendant. Defendant explains Plaintiff stood in front of the cell door and flap in contravention of her direct orders, preventing her from safely securing the flap. In contrast, Plaintiff avers Defendant closed *and* secured the flap and walked away from his cell, only returning to stop him from knocking on his cell door in an attempt to get her attention. "[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version." Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir. 2005). Plaintiff's sworn statements in the record before the Court create a dispute of material fact, disallowing summary judgment.

"Pepper spray is an accepted non-lethal means of controlling unruly inmates," and it is undisputed that "[p]rison guards may use force when necessary to restore order . . . ." Danley v. Allen, 540 F.3d 1298, 1307, *overruled on other grounds as recognized in* Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). The Eleventh Circuit has recognized the use of sprays with inflammatory properties may be a reasonable alternative to escalating a potentially dangerous situation without causing permanent injury. See Danley, 540 F.3d at 1307-08; Burke v. Bowns, 653 F. App'x 683, 696 (11th Cir. 2016) (*per curiam*). However, the temporary pain caused by pepper spray may still be constitutionally cognizable "where chemical agents are used unnecessarily, without penological justification, or for the very

10

purpose of punishment or harm . . . ." Thomas v. Bryant, 614 F.3d 1288, 1311 (11th Cir. 2010).

Indeed, "'[n]ot every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions.'" Rivera v. McNeal, No. CV 1:19-1037-KD-N, 2021 WL 1151558, at *6 (S.D. Ala. Feb. 24, 2021) (quoting Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002)), *adopted by* 2021 WL 1151533 (S.D. Ala. Mar. 25, 2021). Thus, while "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders[,]" the analysis still requires "an assessment of 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them[.]'" Danley, 540 F.3d at 1307-08 (quoting Whitley, 475 U.S. at 321).

Defendant has failed to negate either the objective or subjective element of Plaintiff's excessive force claim. Plaintiff's facts show Defendant sprayed him simply to stop him from knocking on the cell door after she already closed and secured the flap. Accordingly, the factors listed in Hudson and Campbell cut in favor of the Plaintiff. While Plaintiff's injuries were minimal and Defendant provided warnings, a reasonable juror could find little need for physical force, and certainly not a reasonable threat justifying an overnight stay in a pepper spray coated cell. If Plaintiff's flap was already secured when Defendant approached to spray him, then Defendant's articulated safety concerns had already been neutralized. See Danley, 540 F.3d at 1309 ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."). Defendant's continued (but brief) knocking after commands to stop constituted only a minimal disturbance with little threat to prison safety or order. As the Eleventh Circuit recently explained, "a prisoner initiating a

11

verbal altercation does not give prison guards carte blanche to use force sadistically and maliciously." Williams v. Radford, 64 F.4th 1185, 1197 (11th Cir. 2023).

The Court recognizes deference should be accorded to prison officials acting to preserve discipline; however, Defendant does not provide any penological justification for spraying Plaintiff on October 5th if he was simply knocking on the cell door against orders. In briefing, Defendant cites Brockington v. Stanco to say a prisoner's refusal to follow orders could undermine an officer's authority throughout the facility and non-violent protests can eventually escalate into violent resistance. (See doc. no. 32-1, p. 11); Brockington v. Stanco, No. 514CV38MTTCHW, 2016 WL 4443204, at *6 (M.D. Ga. May 25, 2016), *adopted by* 2016 WL 4445475 (M.D. Ga. Aug. 19, 2016).  However, in Brockington, the prisoner plaintiff had refused orders to remove his arm from the tray flap in violation of prison policies, and the officer's use of force was simply pushing down on the flap to force Plaintiff to withdraw.  Id. at *2.  Those justifications provide little guidance to Plaintiff's version of events here, where Plaintiff was pepper sprayed for simply knocking on his cell door to get Defendant's attention. Courts have found such facts can constitute excessive force.  See Holland v. McDonald, No. CV-05-J-1968-S, 2007 WL 9751715 (N.D. Ala. Nov. 28, 2007) ("If, as [Plaintiff] alleges, he was doing nothing more than banging on the cell door and yelling at the officers, then the only explanation for the officers' decision to move [him] to the restraint chair and use excessive force is that they were acting maliciously."); Ramirez v. Ferguson, No. 08-CV-5038, 2011 WL 1157997, at *15 (W.D. Ark. Mar. 29, 2011) (denying summary judgment for officer who pepper sprayed drunk arrestee after warning him to stop banging head on patrol car door); Small v. Whittick, No. CIV.A. 06-1363, 2010 WL 3881303, at *1 (D.N.J. Sept. 27, 2010) (denying summary judgment for officer who pepper sprayed paraplegic inmate who was

banging on cell door and cursing at officer).

In contrast, under Defendant's facts, she had a serious and cogent reason to have Plaintiff step away from the open flap before she approached and secured it. If Plaintiff was indeed defying her orders to do so, the use of force, including a quick burst of pepper spray, would not violate the Eighth Amendment. See, e.g., Burke, 653 F. App'x at 696 (finding no excessive force when officers sprayed two short bursts of pepper spray into cell after plaintiff refused to submit to handcuffs and repeatedly did not comply with commands); Driver v. Novy, Civ. Act. No. 6:15-cv-55, 2017 WL 2313005, at *3 (S.D. Ga. Mar. 22, 2017) ("Defendant needed to use some measure of force against Plaintiff in an effort to secure his person and obtain Plaintiff's compliance in securing the tray flap—particularly in the face of Plaintiff's repeated refusal."), *adopted by* 2017 WL 2312835 (S.D. Ga. May 26, 2017).

In sum, if Plaintiff's version of the facts is correct, Defendant subjected him to excessive force by pepper spraying him without sufficient cause, evidencing wantonness in the infliction of pain. If Defendant's version is correct, she was justified to use pepper spray to bring Plaintiff under control in the face of a legitimate threat. This material, factual discrepancy between the parties concerning the use of the pepper spray must be resolved by a jury. See Williams v. Rickman, 759 F. App'x 849, 853 (11th Cir. 2019) (*per curiam*) ("[Plaintiff] has presented sufficient evidence to establish a genuine dispute of material fact as to whether the alleged improper use of pepper spray and the alleged subsequent overnight confinement in a contaminated cell constituted excessive force under the Eighth Amendment.").

### 3. Qualified Immunity Does Not Apply, and the Type of Damages Sought Is Not Dispositive

The Court quickly dispenses with Defendant's remaining arguments. Defendant argues she is entitled to qualified immunity. (Doc. no. 32-1, pp. 13-14.) However, a qualified immunity defense is not available on the excessive force claim. Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002). Use of excessive force is clearly established to be a violation of the Constitution. Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 319. Because there is "simply no room for a qualified immunity defense when the plaintiff alleges such a violation," the sole question is "whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment." Skrtich, 280 F.3d at 1301. As discussed above, there is a material dispute of fact as to the excessive force claim, and thus, summary judgment should be denied to the extent Defendant argues qualified immunity shields her from liability. Bowden v. Stokley, 576 F. App'x 951, 955 (11th Cir. 2014) ("[W]here the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate.").

Defendant also argues Plaintiff is not entitled to compensatory damages even if a constitutional violation is found, under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), ("PLRA"), because his injuries are *de minimis*. (Doc. no. 32-1, pp. 6-7; doc. no. 34-1.) Section 1997e(e) provides, in pertinent part, as follows: "No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Thus, the PLRA prohibits federal civil actions by prisoners alleging purely mental or emotional injury and no physical injury. Mitchell v. Brown &

Williamson Tobacco Corp., 294 F.3d 1312-13 (11th Cir. 2002).  To survive application of the § 1997e(e) bar, the physical injury must be more than *de minimis*.  Id. at 1213.  "The meaning of the phrase 'greater than de minimis,' however, is far from clear."  Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009) (*per curiam*).  In the context of injury resulting from pepper spraying, the Eleventh Circuit has ruled "§ 1997e(e) does not automatically bar compensatory or punitive damages for injuries, like pepper spraying, which normally leave 'no lasting effect[].'"  Thompson v. Smith, 805 F. App'x 893, 902 (11th Cir. 2020) (*per curiam*).

Further, although the Eleventh Circuit has not set forth a specific test to decide whether injuries following the use of pepper spray are more than *de minimis*, it has recognized a prisoner can recover for greater than *de minimis* physical injury even if the injury falls short of requiring professional medical attention.  Id. at 905  (determining reasonable jury could find injuries exceeded *de minimis* threshold based on claim prisoner was peppered sprayed and left with chemical on face for twenty minutes, experienced difficulty breathing, coughing, and extended burning sensation on skin, was forced into extended shower that exacerbated effects, and returned to contaminated cell for additional day, even if professional medical attention not required); but see Pierre v. Padgett, 808 F. App'x 838, 844 (11th Cir. 2020) (*per curiam*) (explaining recovery of damages under PLRA differs from Eighth Amendment excessive force claim and scrapes, scratches, minor bruising or swelling, or "momentary discomfort" beyond temporary burning sensation from pepper spray does not satisfy requirement for more than *de minimis* physical injury).

Here, Plaintiff alleges more than mental or emotional injury.  He has claimed actual physical injury from being pepper sprayed.  As aptly explained by another court, "Plaintiff is also seeking damages for the *actual* physical injuries he received from the alleged excessive

15

use of force. This Court can find no authority limiting a prisoner's damages for the *actual* physical injury he may have suffered, even if the court determines that the injury was *de minimis*." Nix v. Carter, No. 5:10-cv-256, 2013 WL 432566, at *2 (M.D. Ga. Feb. 1, 2013). Indeed, other courts have concluded that when there is evidence of some injury, even when healed without treatment, the trier of fact should make the *de minimis* determination. See Thompson, 805 F. App'x at 905; Cotney v. Bowers, No. 2:03-CV-1181-WKW, 2006 WL 2772775, at *7 (M.D. Ala. Sept. 26, 2006) (finding allegation of bruised ribs after use of fore sufficient to overcome § 1997e(e) bar because there was some evidence from which jury could determine whether injuries more than *de minimis*); see also Thomas v. Hutcheson, Civ. Act. No. 6:14-cv-16, 2015 WL 4378278, at *13-14 (S.D. Ga. July 15, 2015), *adopted by* 2015 WL 5072037 (S.D. Ga. Aug. 26, 2015) (Hall, C.J.); Knighten v. Stanton, No. CA 12-1717-WS-C, 2014 WL 1331026, at *9 (S.D. Ala. Mar. 31, 2014).

Moreover, even if a plaintiff succeeds on an excessive force claim based on an analysis of the nature of the force used in the circumstances, if the evidence reveals a relatively modest nature of alleged injuries, this "will no doubt limit the damages" that may be recovered. Wilkins, 559 U.S. at 40; see also Williams, 759 F. App'x at 853-54 (explaining "the absence of serious or permanent physical harm alone" may "ultimately limit the amount of damages than can be recovered" but does not defeat excessive force claim at summary judgment). However, at the summary judgment stage, the extent of Plaintiff's alleged injuries should not eliminate the opportunity to seek compensatory damages. Thus, summary judgment should be denied on the issue of availability of compensatory damages.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion for summary judgment be **DENIED**.  (Doc. no. 32.)

SO REPORTED and RECOMMENDED this 4th day of May, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA